## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL DAVID WILLIAMS,** | § | |
| **#01913738,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO. 3:17-CV-0215-D-BK** |
| | § | |
| **LORIE DAVIS, Director, TDCJ-CID,** | § | |
| | § | |
| **Respondent.** | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for writ of habeas corpus

under 28 U.S.C. § 2254 was referred to the United States magistrate judge for findings,

conclusions, and recommendation. Upon review of the relevant pleadings and applicable law,

and for the reasons that follow, the habeas corpus petition should be **DENIED**.

### I. BACKGROUND

A jury convicted Michael David Williams ("Williams") of the offense of continuous

sexual abuse of a young child and sentenced him to 99 years in prison. *State v. Williams*, No.

D34123 (13th Jud. Dist. Court, Navarro Cty., Tex., Feb. 28, 2014), *aff'd*, No. 07–14–00128–CR,

2015 WL 410597, *1 (Tex. App.—Amarillo, Jan. 29, 2015, pet. ref'd), *cert. denied*, --- U.S. ---,

136 S. Ct. 241 (2015). Subsequently, the Court of Criminal Appeals (CCA) denied state habeas

relief without written order. *Ex parte Williams*, No. 85,801-01, Doc. 18-22 (Tex. Crim. App.

Nov. 9, 2016).[1]

---

[1] The state habeas court record is available at Doc. 18-25, the clerk's record (C.R.) is available at
Doc. 18-3, and the reporter's record (R.R.) is available at Doc. 18-4 through 18-22.

On January 24, 2107 Williams filed his *pro se* federal habeas petition, asserting trial and habeas court errors, double jeopardy, prosecutorial misconduct, and ineffective assistance of counsel at trial and on appeal.  Doc. 3 at 6-7, 12-16.  Respondent maintains the claims lack merit. Doc. 28.  Williams has filed a reply.  Doc. 31.

## II. SUMMARY OF EVIDENCE

After independently verifying its accuracy, the Court takes, verbatim, the following summary of the trial evidence recounted from the State's appellate brief:

In May, 2010, AW, then nine years old, made an outcry of sexual abuse to her mother…. 3 RR 206-207. During her outcry, and subsequently throughout the summer, AW told her mom that her dad, Appellant, touched her "bad spot" (sexual organ), made her touch his bad spot, and put his mouth on her bad spot and that these instances occurred in several locations on multiple occasions. *Id.* at 206-208. AW also told her mom that when her dad made her touch his bad spot, stuff would come out and Appellant would tell her "this is how you know when daddy's happy." *Id.* at 201. After AW made this outcry, [her mother] made contact with her husband, Appellant, who was at work, and informed him that AW had made an outcry of sexual abuse against him. Id. at 209. When Appellant got home from work, he and [AW's mother] confronted AW about the outcry but AW still maintained that the outcry was the truth. 3 RR 210. AW told her mom that the abuse began when the family started raising rabbits, when they lived in the Kerens, Texas area, and continued when they moved to the house in Corsicana. 3 RR 182-183, 216-217. [AW's mother] did not immediately report the abuse but waited until the end of July to report it to the Navarro County Sheriff's Office. 3 RR 215. Detectives Hank Bailey and Scott Stephens were assigned to investigate the case and immediately arranged for AW to be interviewed by the forensic interviewer at the Navarro County Children's Advocacy Center. *Id.* at 22-23, 50-51. Detective Stephens observed the forensic interview, during which AW made an outcry of sexual abuse. *Id.* at 50-51. Detective Stephens obtained a written statement from [AW's mother], confirmed that the family lived in the Kerens, Texas area and began raising rabbits at some time during the summer of 2007, and determined that the family moved to Corsicana, Texas in November, [sic] 2009. 3 RR 57-60. Following the forensic interview, the detectives obtained a search warrant and went to Appellant's house to look for evidence that would substantiate the outcry made by AW. *Id.* at 25, 66-73. They located multiple items of pornography, validating one statement made by AW that her dad showed her porn. 3 RR 29-30, 55.

During trial, the State called Licensed Sex Offender Therapy Provider Dr. Madeleine Byrne to testify about the deviant nature of the pornography and to explain the significance of the incestuous pornography discovered. 3 RR 106-11, 114-115. Dr. Byrne discussed various subjects including the offense cycle, incestuous offenders and Appellant's obvious attachment to the pornography found in his house. *Id.* at 93-118. Forensic Interviewer Lydia Bailey testified about the forensic interview of AW and described how, during the interview, AW became extremely distressed when talking about sexual abuse, would not talk about the abuse but used hand motions to demonstrate and wrote down responses to Ms. Bailey's questions instead of saying them out loud. 3 RR 159-67. AW testified and told the jury that Appellant touched her bad spot (sexual organ) and made her touch his middle spot (sexual organ). 4 RR 19, 23, 31. The State concluded its case by calling Licensed Professional Counselor Steve Vaughan who began counseling AW in February 2012. *Id.* at 48. Mr. Vaughan explained that AW had a physical reaction when speaking of the abuse and indicated it occurred multiple times over an extended period of time. *Id.* at 54-55. Appellant testified and called multiple witnesses in his case. 4 RR 71-138. Following the presentation of evidence and deliberations the jury found Appellant guilty.

Doc. 18-14 at 6-8; Doc. 28 at 4-6.

## III. STANDARD OF REVIEW

Williams is not entitled to habeas corpus relief unless the state court's adjudication on the

merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Williams bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), since the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24

(citation and internal quotation marks omitted).  Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'"  *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102)).  Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted.  *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable."  *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law") (quotations and quoted case omitted; emphasis in original).  The deferential standard of review applies even where the state court, as in this case, summarily denied all claims without written order.  *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

## IV. ANALYSIS

### A.  Adequacy of state habeas proceedings – Claim 1

Williams challenges the adequacy of the state habeas proceedings, claiming the State failed to respond timely and address the claims on the merits.  Doc. 3 at 6; Doc. 4 at 8-9.  Infirmities in collateral proceedings, however, are not grounds for federal habeas relief and, therefore, this claim fails.  *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001).

**B.  Variance between indictment and evidence – Claim 2**

Williams asserts there was a "fatal variance" between the offense charged in the

indictment – continuous sexual abuse of a child between January 1, 2008 and January 30, 2010 –

and the victim's testimony at trial that the abuse occurred only during the 2006/2007 school year.

Doc. 3 at 6; Doc. 4 at 10-12.  He, thus, claims that the alleged acts preceded not only the date

range in the indictment, but also the September 1, 2007 effective date of the continuous-sexual-

abuse statute.  Contrary to Williams' self-serving assertions, there was no fatal variance between

the indictment and the testimony presented at trial.  Ample evidence was presented at trial

through the victim, her mother (the outcry witness), and the victim's counselor that the sexual

abuse was ongoing and continued until the victim was nine years old.

Second, even if Williams' claim is construed as an attack on the sufficiency of the

indictment, it does not present a federal constitutional claim.  *See Sanchez v. Scott,* 43 F.3d 670,

1994 WL 725160 (5th Cir. 1994) (unpublished per curiam) (construing fatal variance between

indictment and proof at trial to challenge sufficiency of indictment (citing *Williams v. Collins,* 16

F.3d 626, 637 (5th Cir. 1994)).  Indeed, Williams has not alleged, much less established, that the

indictment was so flawed that it deprived the trial court of jurisdiction.  *See McKay v. Collins*, 12

F.3d 66, 68 (5th Cir. 1994).  Nevertheless, federal habeas review is foreclosed "[w]here state

courts have held that an indictment is sufficient under state law."  *Id.*

In this case, Williams challenged the sufficiency of the indictment in his state habeas

application.  Doc. 18-25 at 22.  Finding no controverted, unresolved facts material to the legality

of his conviction, the trial court recommended that the petition be denied and the CCA denied

the application without written order, thus, implicitly finding the indictment sufficient.  Doc. 18-

25 at 193; Doc. 18-22 at 1.  *Cf. Malena v. Thaler*, No. 3:11-CV-3224-D-BK, 2012 WL 4928875, at *1-2 (N.D. Tex. Sept. 13, 2012), recommendation accepted, 3:11-CV-3224-D, 2012 WL 4929496 (N.D. Tex. Oct. 17, 2012) (CCA's implicit finding that indictment was not defective foreclosed habeas review because the petitioner had squarely presented his claim in state habeas application, which the CCA denied without written order on the findings of the trial court).

Because the state court's determination impliedly rejecting Williams' claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, this claim fails.

## C. Double Jeopardy – Claim 3

Next, Williams asserts a double jeopardy violation.  Doc. 3 at 7.  He claims the State's dismissal of the first indictment after jeopardy attached was equivalent to an acquittal.  Doc. 27 at 5-6.  However, as he acknowledges, his first trial ended in a mistrial because of a deadlocked jury; thus, a verdict was never returned.  Doc. 27 at 5; Doc. 4 at 13-14.  A deadlocked jury "has long been considered the 'classic basis' establishing [manifest] necessity" justifying a mistrial. *Blueford v. Arkansas,* 566 U.S. 599, 609 (2012) (quoted case omitted).  Consequently, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [a defendant] was subjected." *Richardson v. United States,* 468 U.S. 317, 326 (1984).  Simply put, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Id.* at 325.

Contrary to Williams' argument, the State's motions to dismiss the original indictment— because the case initially was re-indicted under a different case number and later re-indicted

under the case number in which the original continuing sexual abuse offense was charged—was not "the equivalent of an acquittal." Doc. 27 at 5.  Williams' reliance on *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016), is inapposite.  In *Duran*, unlike this case, the State moved to dismiss the aggravated-assault conviction after a guilty verdict had been returned.  *Id.* There, the original jeopardy had terminated and the dismissal of the aggravated-assault conviction was indistinguishable from an acquittal.  *Id.*

In sum, Williams has failed to demonstrate that his conviction following the mistrial violated the Double Jeopardy Clause's prohibition against successive prosecutions.  As such, the state court's determination impliedly rejecting this claim was neither contrary to, nor involved an unreasonable application of clearly established federal law.  Accordingly, this claim has no merit.

### D.  Prosecutorial misconduct (presentation of false testimony) – Claim 4

Williams also claims prosecutorial misconduct, asserting that the State knowingly presented false testimony and specifically alleging that there were: (1) discrepancies between the victim's testimony and the State's arguments presented at trial, (2) inconsistencies between the victim's mother's testimony and the victim's testimony about the same events, and (3) differences in the victim's mother's testimony at the 2012 and 2014 trials relating to her report of the victim's initial outcry.  Doc. 3 at 7; Doc. 4 at 14-16.  However, Williams fails to offer any factual or legal support for his allegations of prosecutorial misconduct.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (Without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

To prove a Due Process Clause violation based on the state's reliance on false testimony, the defendant must establish: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)).  Moreover, "contradictory trial testimony . . . merely establishes a credibility question for the jury," and does not suffice to establish that certain testimony was perjured.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Williams' bare assertions wholly miss the mark. Even more important, Williams has failed to establish that the prosecutors were aware that the testimony in question was false.

Because the state court's implicit determination of this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law, this claim also fails.

**E.  Confrontation Clause – Claim 5**

Williams also claims a Confrontation Clause violation based on the court instructing, pursuant to the State's motion in limine at his retrial in 2014, that if counsel for either party believed a witness was changing his/her testimony from that given during the 2012 trial, they were to ask the witness, "Do you remember telling us something different before?"  Doc. 4 at 19. Williams argues that, based on the court's ruling, defense counsel could cross-examine the victim and her mother about their prior inconsistent testimony at the 2012 trial, but could not impeach them,  He thus contends that he was prevented from presenting "a complete defense." Doc. 4 at 20-21.

Williams' Confrontation Clause claim is a non-starter.  Since both the victim and her mother both testified at the 2014 trial, Williams cannot show a violation of the Confrontation

Clause, and his reliance on *Crawford v. Washington*, 541 U.S. 36, 59 (2004), is completely

misplaced. *See* U.S. CONST. amend. VI (under the Sixth Amendment, a criminal defendant

"enjoy[s] the right . . . to be confronted with the witnesses against him"); *Crawford*, 541 U.S. at

59 (holding that the Confrontation Clause bars testimonial statements of a witness who does not

appear at trial unless: (1) he was unavailable to testify; and (2) the defendant had a prior

opportunity to cross-examine the witness).

     The state court's determination impliedly rejecting this claim was neither contrary to, nor

involved an unreasonable application of, clearly established federal law.  Consequently, this

claim fails.

### F.  Ineffective assistance of counsel at trial

#### 1.  Standard of review

     Claims of ineffective assistance of counsel are reviewed under a "doubly deferential"

standard, to-wit: the Court takes "a 'highly deferential' look at counsel's performance . . .

through the 'deferential lens of § 2254(d).'"  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)

(citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoted case omitted).  In light of the

deference accorded pursuant to section 2254(d)(1), "[t]he pivotal question is whether the state

court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S. 86, 101.

     To establish ineffective assistance of counsel at trial, a petitioner must show that

counsel's performance was deficient and that the deficient performance prejudiced the defense.

*Strickland*, 466 U.S. 668, 687.  The Court need not address both components if the petitioner

makes an insufficient showing on one.  *Id.* at 697.  To establish deficient performance, a

petitioner must show that his attorney's actions "fell below an objective standard of

reasonableness." *Id.* at 689.  In evaluating an attorney's performance, there is a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance," or that under the circumstances the challenged action might be considered sound

trial strategy.  *Id.* at 689.  Under *Strickland*'s prejudice prong, a petitioner additionally must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Id.* at 694.

The State habeas court implicitly denied Williams' claims of 11 instances of ineffective

assistance of counsel at trial.  Applying the appropriate deference and having independently

reviewed Williams' claims and the state court record, the Court concludes the state court's

application of *Strickland* was reasonable.

### 2.  Failure to investigate and call witnesses – Claims 6-7

Williams does not present any factual basis for his claim that counsel was ineffective for

failing to investigate: (1) the victim, (2) the victim's purported prior false accusations of

inappropriate touching at school, (3) the victim's relationship with her best friend, or (4) the

victim's mother's motive for supposedly fabricating the charges.  Doc. 3 at 12; Doc. 4 at 22-23.

Allegations of a counsel's failure to investigate must state with specificity what the investigation

"would have revealed and how it would have altered the outcome of the trial."  *See Lockett v.

Anderson*, 230 F.3d 695, 713 (5th Cir. 2000).  "Mere conclusory allegations in support of a claim

of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v.

Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).  Williams claims to have conferred with counsel

and given him the name of several witnesses.  But, he does not allege, much less establish, how

further investigation would have helped his defense and, ultimately affected the outcome of his trial.

 In addition, Williams does not identify any of the additional witnesses or provide evidence that they were available and willing to testify and that their testimony would have been favorable to his defense.  To show that counsel rendered ineffective assistance by neglecting to secure and call a lay or expert witness, the petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  As Williams has not done so, he fails to satisfy the prejudice prong under *Strickland*.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (denying uncalled witnesses claim because petitioner failed to present affidavits from missing witnesses); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (rejecting failure to interview claim because petitioner failed to identify the potential witnesses or the subject matter of their proposed testimony).

 Likewise, Williams does not identify the psychological expert the court could have appointed to testify about the victim's prior false accusations.  Doc. 3 at 12.  He also fails to allege with specificity the substance of the missing experts' testimony or explain how the testimony of the expert would have been favorable to his defense in his case-in-chief or the punishment phase of his trial.  *See, e.g., Evans v. Cockrell,* 285 F.3d 370, 377-78 (5th Cir. 2002) (denying uncalled expert witness claim where petitioner failed to present evidence of what scientific expert would have stated if called).  As such, he fails to show *Strickland* prejudice.

### 3. Failure to obtain ruling on impeachment evidence – Claim 8

Williams asserts counsel rendered ineffective assistance in failing "to obtain a ruling on admissibility of impeachment evidence" from the 2012 trial after the court granted the State's motion in limine. Doc. 3 at 13; Doc. 18-25 at 36-37. He avers that evidence from the 2012 trial "would have enabled the defense to impeach the state's witnesses with prior inconsistent statements given under oath." Doc. 3 at 13. However, a review of the record reveals that neither of the State's three motions in limine (initially filed before the 2012 trial, and subsequently transferred to the new cause number for the 2014 trial) requested to exclude evidence or testimony from the 2012 trial. Doc. 18-3 at 28-36. Williams has pointed to no support in the record for his claim that counsel's performance was deficient. That notwithstanding, he again fails to show prejudice, namely that the purported impeachment evidence was admissible and could have changed the result of the trial.

Because Williams has provided nothing more than conclusory allegations that counsel's performance fell below an objective level of reasonableness and that he was prejudiced as a result, his claim fails. *See Ross v. Estelle*, 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value.").

### 4. Failure to strike juror – Claim 9

Williams asserts that counsel provided ineffective assistance in failing to strike juror 11, Mr. Ferguson, who Williams contends was biased against him. Doc. 3 at 13. Williams avers that because Ferguson had worked at the same company as Williams for seven years and "had dealings with [him] and his children," he asked counsel to strike him to avoid "undue tension . . .

that could make Ferguson bias[ed] against him." Doc. 3 at 13; Doc. 18-25 at 38. However, Williams has shown no basis for finding deficient performance or prejudice, thus, this claim fails.

Williams' assertions are contradicted by the record, which reveals that Ferguson did not raise his hand when the prosecutor asked the venire panel if anyone knew Williams or defense counsel. Doc. 18-5 at 21-25 (R.R. 2); Doc. 18-3 at 59 (venire panel list). Thus, there is no evidence that the juror was actually or impliedly biased. *See Virgil v. Dretke,* 446 F.3d 598, 608-10 (5th Cir. 2006) (in addressing deficient performance prong, the court first evaluates whether the juror was actually biased). Moreover, Williams also has offered no proof that he requested counsel to strike Ferguson or conveyed his belief that the juror was biased. *See Green v. Johnson*, 160 F.3d 1029, 1042 (conclusory allegations do not support a claim of ineffective assistance of counsel). Consequently, Williams has not overcome the presumption that the failure to strike Ferguson fell within the wide range of reasonable assistance; nor has Williams shown that Ferguson's presence on the jury prejudiced him.

### 5.   Failure to make motions or objections – Claims 10-15

Williams complains of six instances in which he contends counsel failed to make a motion or objection. The arguments Williams suggests that counsel should have made, however, lack merit. Thus, counsel was not ineffective for failing to make them. *See Green*, 160 F.3d at 1037 ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

Counsel was not ineffective in failing to make Williams' fatal variance and double jeopardy arguments, Doc. 3 at 13-14; Doc. 18-25 at 40-41, 46, since, as discussed supra, they

lack merit.[2]  Moreover, the jury instruction, vindictive prosecution, and non-unanimous verdict issues that Williams contends counsel should have also raised, Doc. 3 at 14-15; Doc. 18-25 at 42-45, 50-51, likewise lack merit.

As to counsel's failure to object to an erroneous jury instruction, Williams wholly fails to establish prejudice.  While the jury charge improperly mentioned "touching of the breasts," which was specifically excluded from the statute as a method a committing the offense, the court of appeals found the error did not amount to egregious harm so as to require reversal.  *Williams v. State*, 2015 WL 410597, at *2-3.  Williams has not offered anything to establish that the outcome of his trial would have been different if counsel had objected to the erroneous instruction.

Likewise, Williams proffers nothing to support his allegation of prosecutorial retaliation. His claim is premised on the fact that after his first trial ended in a mistrial, he was reindicted for the offense of continuous sexual abuse of a child, which carried a greater punishment range. However, the mere reindictment of a defendant following a mistrial due to a hung jury is insufficient to show a realistic likelihood of prosecutorial vindictiveness absent evidence of actual retaliation.  *See United States v. Ruppel*, 666 F.2d 261, 267 (5th Cir. 1982).  Moreover, contrary to Williams' argument, Doc. 3 at 15, an objection "to the [continuous sexual abuse] statute allowing a non-unanimous verdict," would have been wholly frivolous.  Texas courts have unequivocally held that the continuous sexual abuse statute does not violate the defendant's

---

[2] Counsel raised a similar argument when he moved for a directed verdict -- contending the dates in the victim's testimony did not coincide with those in the indictment -- and the court denied counsel's request.  Doc. 18-7 at 69-70 (R.R. 4).

right to a unanimous jury verdict.  *See e.g. Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—
Fort Worth 2013, no pet.) (collecting cases).

As to counsel's alleged failure to object to Dr. Steven Vaughn's testimony as hearsay,
Williams is mistaken in his characterization of it.  Doc. 3 at 15; Doc. 18-25 at 48.  The
statements Williams complains of simply were not hearsay, thus, counsel was not ineffective for
failing to object.

Vaughn's testimony—that the victim's mother informed Vaughn, the victim's counselor,
of the alleged abuse when scheduling the initial appointment—was in response to the
prosecutor's inquiry about who first made Vaughn aware of the alleged abuse, and it did not
recount the substance of the mother's statement.  Doc. 18-7 at 49-50.  Moreover, to the extent
Vaughn's response implied the substance of the mother's out-of-court statement, it was not
offered for to prove the truth of the matter asserted.  *See* TEX. R. EVID. 801(d) (hearsay is a
statement, other than one made by the declarant while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted).

Likewise, Vaughn's testimony regarding the nature and extent of the abuse the victim
suffered (which also was read to the jury in response to a jury note during deliberations) was in
response to the prosecutor's inquiry of whether Vaughn had treated the victim for one or
multiple instances of abuse and whether the abuse occurred over a short or extended period.
Doc. 18-8 at 76-77 (R.R. 5).  Vaughn's response was his own "belief" resulting from his
treatment of the victim and it did not recount any out-of-court statements. *Id*.  To the extent
Vaughn's testimony could be read to imply an out-of-court statement, such was not offered to
prove the truth of the matter asserted.

**6.  Failure to advise about probation eligibility – Claim 16**

Williams contends counsel rendered ineffective assistance in failing to advise him that he was ineligible for probation.  Doc. 3 at 15.  He avers that counsel filed a pre-trial *Application for Community Supervision from the Jury*, which he claims led him to believe that the judge might place him on probation in the event of a guilty verdict.  Doc. 18-3 at 24-25.  Williams' claim is belied by the record.  Significantly, on the first day of trial, the prosecutor acknowledged that Williams' offense was not eligible for community supervision and defense counsel confirmed that he had filed the *Application for Community Supervision* "in an overabundance of caution" and "to cover all the bases" in the event Williams was convicted of a lesser included offense. Doc. 18-5 at 187.  In any event, Williams completely fails to show that he was prejudiced by counsel's purported inaction.

**G.  Failure to file motion for new trial – Claim 17**

Williams asserts appellate counsel also rendered ineffective assistance in failing to file a proper motion for new trial.  Doc. 3 at 16; Doc. 18-25 at 34-35.  He complains that the motion for new trial did not include an affidavit and relied instead on the record to claim that trial counsel was ineffective for failing to investigate prior false allegations by the victim and cross examine her at trial.  Doc. 18-3 at 115 (*Motion for New Trial*); *McAfee v. Thaler,* 630 F.3d 383, 391 (5th Cir. 2011) (recognizing right to the assistance of counsel in relation to a motion for new trial).  Once again, Williams' conclusory allegations do not establish that that he was prejudiced, namely that he would have been granted a new trial or that he was deprived of an effective appeal in the absence of such a motion.  *See Hall v. Thaler,* 390 Fed. App'x 404, 406-07 (5th Cir. 2010) (per curiam) (rejecting conclusory assertions that "counsel's actions deprived him of a

fair trial or an effective appeal"). As such, the state court's implicit denial of this ground for relief was reasonable.

### H. Ineffective assistance of counsel on appeal – Claim 18

Williams' claim of ineffective assistance of counsel on appeal fares no better. Williams asserts his appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence. Doc. 3 at 16; Doc. 18-25 at 58-59. On direct appeal, counsel argued the jury charge and attorney fee assessment were wrong. Although the State conceded both grounds, the court held neither justified reversal of the judgment. *Williams v. State*, 2015 WL 410597, at *1.

Applying the appropriate deference and having independently reviewed Williams' claim and the state court record, the Court concludes that the state court's implicit application of *Strickland* was reasonable. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* standard in evaluating the ineffective assistance of appellate counsel). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751-752 (2000)). It is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (counsel is obligated only to raise and brief those issues that are believed to have the best chance of success).

Williams has not demonstrated that insufficiency of the evidence was clearly stronger than the issues counsel did pursue on direct appeal. *See Smith*, 528 U.S. at 288 ("[g]enerally,

Page 17 of 19

only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome") (cited case omitted).  Williams reiterates that the evidence presented at trial preceded the date range in the indictment and the enactment of the statute.  Doc. 3 at 16.  However, as previously noted, his assertions have no merit and Williams offers no further explanation, argument, or legal authority for his suggested claim.  And while he questions the credibility of the state's witnesses, it is well established that "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict."  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).  Notably, he does not point to any particular element of the offense of conviction for which no evidence or insufficient evidence was presented.

Because Williams has not demonstrated that the state court's decision implicitly rejecting his claim of ineffective assistance of appellate counsel was in any way unreasonable, he cannot prevail.

**I.  Evidentiary hearing**

Williams requests an evidentiary hearing to expand the habeas record and prove his allegations.  Doc. 11 at 1.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)).  Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.  Williams cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Thus, he is not entitled to an evidentiary hearing.

## V. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be **DENIED**.

**SO RECOMMENDED** August 24, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE